## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 0:26cv60001

**SOPHIA LOUBEAU-GRIGGS**,
**COREY GRIGGS**
      Plaintiff,

vs.                          **JURY DEMAND**

**CREDIT COUNSELING, INC**,
**HILLCREST OPCO LLC** doing
business as **EMERALD NURSING
AND REHABILITATION CENTER**
      Defendants.

### COMPLAINT

Plaintiffs, Sophia Loubeau-Griggs and Corey Griggs, by and through counsel, hereby files their complaint, and alleges:

PARTIES

1.    Plaintiff, Sophia Loubeau-Griggs, ("Loubeau"), is a citizen of Florida.

2.    Plaintiff, Corey Griggs, ("Griggs"), is a citizen of Florida.

3.    Defendant, Credit Counseling, Inc, ("CCI") is a corporation organized under the laws of Florida and has its principal place of business in the same.

4.    Defendant, Hillcrest OPCO LLC, ("Hillcrest") is a corporation organized under the laws of Florida and has its principal place of business in the same.

### JURISDICTION & VENUE



5.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This court has supplemental jurisdiction for Plaintiffs' closely related state law claims pursuant to 28 USC § 1367.

6.       Venue is proper because the events giving rise to Plaintiffs' claims occurred in the Southern District of Florida.

7.      All condition precedents have been satisfied.

STATEMENT OF FACTS

8.      Plaintiffs Corey Griggs and Sophia Loubeau are husband and wife (collectively, the "Family").

9.      In 2022, the Family's circumstances were significantly impacted when Shirley Thornton, Griggs's mother and Loubeau's mother-in-law, became seriously ill and was hospitalized at North Shore Medical Center.

10.      Following her hospitalization, Ms. Thornton was transferred and admitted to Hillcrest's nursing home, Emerald Nursing and Rehabilitation Center ("Emerald"). The transfer was coordinated by hospital staff, and no family member, including the Plaintiffs, signed any contract or agreement accepting financial responsibility for Ms. Thornton's care.

11.      During Ms. Thornton's admission or billing process, Emerald Nursing and Rehabilitation Center internally designated Sophia Loubeau as an "A/R Guarantor," "A/R Representative," and "Emergency Contact," identifying her as the



decedent's daughter-in-law. Loubeau never signed any guaranty, admission agreement, or other document accepting personal financial responsibility for Ms. Thornton's care. The "A/R Guarantor" designation was merely an internal accounts-receivable label, used for billing or contact purposes, and was assigned unilaterally, without Loubeau's knowledge or consent, and without creating any legal obligation.

12.    During Ms. Thornton's stay at the nursing home, the family received notices indicating a balance allegedly owed due to gaps or delays in insurance or Medicaid coverage.

13.    In or around May 2023, Loubeau paid Elder Care Solutions to assist Ms. Thornton to receive Medicaid. Elder Care Solutions later represented to Loubeau that she bore no personal financial responsibility for Ms. Thornton's care and that any balance was associated solely with the Ms. Thornton.

14.    During Ms. Thornton's seven to eight months at the nursing home, the Family received and paid two or three modest invoices, ranging from approximately $400 to $600, which reflected temporary lapses in Medicaid coverage. At no point did the Family consent to or assume responsibility for ongoing financial obligations related to Ms. Thornton's care at Emerald.

15.    Ms. Thornton was eventually transferred to hospice care and passed away in November 2023.

16.     Following her passing, the family continued receiving bills addressed both to Ms. Thornton and, inexplicably, to Loubeau under the name "Sophie Thornton," despite the fact that Loubeau never signed, verbally agreed to, or otherwise assumed any financial responsibility for the alleged debt.

17.     Hillcrest hired CCI to collect Ms. Thorton's unpaid account, as no payment had been received.

18.     Although there was no guarantor agreement or proof of personal liability, Jeffrey Allen, acting on behalf of CCI, reached out to Loubeau. During their first discussion, Mr. Allen stated he was an attorney and insisted that payment be made.

19.     Following this initial contact, the communications escalated, and CCI began placing repeated and frequent collection calls to both Loubeau and Griggs in January 2025, February 2025, April 2025, and May 2025. During each of these communications, CCI threatened litigation, asserted that legal action was imminent or necessary, instructed the family that they needed to retain an attorney, and made derogatory and demeaning remarks directed at Loubeau, whom CCI referred to as "Sophie."

20.     For example, Allen left the following voicemail for Griggs:

> Yeah, I'm looking for Corey Griggs… Jeffrey Allen calling again on behalf of my client, Emerald Nursing… regarding the care of your mother, Shirley… I've had the unpleasant experience of trying to deal with Sophie… she is a *complete incompetent*… She doesn't

respond to phone calls… My client is still not compensated… Been waiting for over a month for this alleged Medicaid approval… If there's not an attorney handling the matter, you need to hire one. My patience is done. 1-800-328-8123.

21.     Allen left the following voicemail for Loubeau:

Yeah, Sophie, Jeffrey Allen again… The account remains unpaid… You have not provided this alleged Medicaid information… It's been weeks since we heard from you… I need to move forward on this… I don't know why there'd be an issue providing the Medicaid number and eligibility period…1-800-328-8123.

22.     In a subsequent voicemail, Allen again stated:

Yeah, I'm looking for Sophie Thornton… *my patience with you is about done*… It's been over a month since you gave me the story about Medicaid being approved… and of course, you just never follow through… These people took care of Shirley. They deserve to be compensated, and *your incompetence is preventing these people from getting paid*… If you *don't have an attorney handling this, I think it's time you get one*.

23.     Communications also took place via email.

24.     On July 15, 2025, Allen sent an email directly to Loubeau, again referring to her as "Sophie" and stating: "The Emerald Nursing Invoices remain outstanding. You have failed to follow thru on *any commitments* including providing Valid Medicaid approval. Inform this office how the debt will be paid." The email included Allen's Credit Counsel contact information, payment link, and a standard debt-collection disclaimer.



25.     On October 30, 2025, the family received a written "Notice of Pending

Claim" from Credit Counsel, Inc., addressed to *"Thorton, Shirley c/o Corey*

*Griggs."* The letter alleged a balance of $13,576.07, threatened legal action within

ten (10) working days, and warned of "immediate" referral to an attorney for

enforcement and judgment collection.



26.     Hillcrest and CCI have not provided evidence that Griggs or Loubeau signed a guaranty or any agreement making them personally liable for Ms. Thornton's nursing-home debt.

27.     When asked to substantiate the alleged obligation, CCI produced only an internal Hillcrest record labeling Loubeau as an "A/R Guarantor," an unsupported internal designation that was improperly relied upon to assert personal liability despite no legal obligation existing.

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
Against CCI

28.     Plaintiffs reallege and incorporate by reference paragraphs 9 through 27 as if fully set forth herein.

29.     Plaintiffs are natural persons who were allegedly obligated to pay a debt within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

30.     The alleged obligation arises from charges claimed by a nursing home for care provided to a family member, Ms. Thorton. Any attempt to impose this obligation on Plaintiffs pertains to a purported personal, family, or household debt and therefore constitutes a "consumer debt" under 15 U.S.C. § 1692a(5).

31.     CCI is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly uses the mails and interstate commerce to collect or attempt to collect debts owed or asserted to be owed to another, including medical and nursing-home debts.

32.     In connection with its debt collection activities, CCI violated multiple provisions of the FDCPA by engaging in false, deceptive, unfair, harassing, and unconscionable collection practices, including but not limited to the following:

a.      False representation of the character, amount, or legal status of the debt (§ 1692e(2)(A)). CCI repeatedly misrepresented that Plaintiffs personally owed a nursing-home debt that belonged solely to Ms. Thorton. CCI continued these representations despite having no documentation showing Plaintiffs ever signed a guarantor agreement, or any other instrument creating personal liability. CCI further misrepresented the legal status of the debt by asserting that Plaintiffs "failed to follow through on commitments," owed Medicaid information, or were responsible for insurance deficiencies—none of which were true.

b.      Threatening action that cannot legally be taken or not intended to be taken (§ 1692e(5)). CCI threatened imminent legal action, referral to attorneys for litigation, and even "enforcement of judgments" in its October 30, 2025 Notice of Pending Claim, despite:

i.      no judgment existing;

ii.     Plaintiffs not being legally obligated for the debt; and

iii.    CCI having no legal basis to sue non-liable family members. CCI's repeated threats to sue were unlawful threats of action that could not be taken.

PIERRE SIMON

600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

c.      False or deceptive means to collect a debt (§ 1692e(10)). CCI used deceptive means to induce payment, including:

i.      addressing collection letters to "Thorton, Shirley c/o Corey Griggs" to imply legal responsibility;

ii.     referring to Loubeau as "Sophie Thornton" to create the appearance of a signed guarantor and providing documentation which stated that she was A/R guarantor responsible party;

iii.    asserting that Loubeau failed to provide Medicaid approval she was not responsible for; and

iv.      imposing false urgency, claiming that payment was required within ten business days to avoid legal action.

v.      These deceptive statements were material and intended to coerce payment of a debt Plaintiffs did not owe.

d.      Harassing, oppressive, and abusive conduct (§ 1692d). CCI engaged in harassing conduct by:

i.      placing repeated collection calls over multiple months;

ii.     having its representative Jeffrey Allen insult, shame, and verbally abuse Plaintiffs—calling Loubeau "incompetent," accusing her of obstructing payment, and insisting she "hire an attorney"; and



iii.     continuing collection efforts after Plaintiffs disputed liability and after CCI knew or should have known Plaintiffs were not responsible for the debt. Such conduct violates § 1692d(2) and the general prohibition on abusive practices.

e.     Unfair or unconscionable means to collect a debt (§ 1692f). CCI used unfair and unconscionable means by attempting to collect a debt from individuals with no legal obligation to pay it, issuing false deadlines, and insisting on payment without verifying the debt. This includes CCI's demand in its October 30, 2025 Notice of Pending Claim threatening immediate attorney referral and judgment enforcement.

f.     Collecting an amount not authorized by agreement or law (§ 1692f(1)). CCI attempted to collect a balance of $13,576.07 and additional unspecified charges not authorized by contract or permitted by law. Plaintiffs never signed an agreement authorizing CCI to assess or collect such amounts, and no legal basis exists to impose this debt on them.

g.     Failure to provide validation and continued collection without verification (§ 1692g). CCI failed to send the required written validation notice within five days of its initial communication. Further, after Plaintiffs disputed the debt and requested documentation, CCI continued aggressive collection efforts— including calls, emails, and written notices—without ever providing verification as required by § 1692g(b).



33.     CCI's violations were deliberate, knowing, and continued over a prolonged period despite Plaintiffs' objections and despite the obvious lack of any legal obligation.

34.     As a direct and proximate result of CCI's unlawful conduct, Plaintiffs suffered actual damages, including emotional distress, anxiety, frustration, disruption of daily life, and time lost addressing repeated unlawful collection efforts. Plaintiffs are entitled to statutory damages, actual damages, costs, and attorney's fees under 15 U.S.C. § 1692k.

### VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT
Against Defendants CCI and Hillcrest

35.     Plaintiffs reallege and incorporate by reference paragraphs 9 through 27 as if fully set forth herein.

36.     Plaintiffs are "consumers" within the meaning of Fla. Stat. § 559.55(8).

37.     Defendants CCI and Hillcrest are "persons" and "debt collectors" within the meaning of Fla. Stat. § 559.55(7), as they directly and indirectly attempted to collect an alleged consumer debt from Plaintiffs.

38.     The alleged obligation Defendants attempted to collect constitutes a "debt" under Fla. Stat. § 559.55(6), as it arose from nursing-home services provided to a consumer and was asserted to be a personal, family, or household obligation.

PIERRE SIMON

600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

39.     At no time did Plaintiffs sign a guaranty, admission agreement, or any other document creating personal liability for Ms. Thornton's nursing-home expenses, and Defendants were aware—or should have been aware—of this fact.

40.     Defendants violated multiple provisions of Fla. Stat. § 559.72 by engaging in unlawful, deceptive, abusive, and unfair collection practices, including but not limited to the following:

41.     Attempting to enforce a debt that was not legitimate (§ 559.72(9)). Defendants claimed, attempted, and threatened to enforce a debt against Plaintiffs knowing that the debt was not legitimate as to them, because it belonged solely to Ms. Thorton (the decedent) and Plaintiffs had no contractual, statutory, or legal obligation to pay it. Despite this knowledge, Defendants pursued Plaintiffs through bills, calls, emails, and written collection notices. Moreover, Defendants employed deceptive practices to induce payment, including:

a.     labeling Loubeau internally as an "A/R Guarantor" without any signed guaranty,

b.     addressing correspondence to "Sophie Thornton" to imply assumed liability,

c.     falsely asserting that Plaintiffs failed to meet Medicaid-related obligations they did not have, and

d.     misrepresenting Plaintiffs' legal responsibility for the debt.



42.    Harassing and abusive conduct (§559.72(7)). Defendants willfully engaged in conduct that could reasonably be expected to harass or abuse Plaintiffs, including repeated collection calls over multiple months, threats of litigation, instructions that Plaintiffs "needed to get an attorney," and the use of insulting and demeaning language directed at Plaintiff Loubeau, including calling her "incompetent" and blaming her for nonpayment.

43.    Impersonating or falsely implying attorney involvement (§ 559.72(12)). Defendants, through their agent Jeffrey Allen, falsely implied or represented that he was acting as an attorney in connection with the alleged debt, or otherwise conveyed attorney involvement, despite no valid legal authority existing to pursue Plaintiffs for the debt.

44.    Simulating legal process or authority (§ 559.72(10)). Defendants issued a "Notice of Pending Claim" threatening immediate legal action, attorney referral, and judgment enforcement, using language and presentation designed to give the false impression of legal authority or imminent judicial action, despite no legal basis existing to pursue Plaintiffs.

45.    Hillcrest is independently liable under the FCCPA because it originated and supplied the false "A/R Guarantor" designation, authorized the collection efforts, and knowingly placed or allowed CCI to place Plaintiffs in collection based on an internal billing label that did not create any legal obligation.



46.     CCI is independently and vicariously liable for its own collection conduct and for acting as Hillcrest's agent in pursuing Plaintiffs for a debt Defendants knew—or should have known—was not legitimate.

47.     Defendants' violations were willful, knowing, and part of a continuing course of conduct, including after Plaintiffs disputed liability and after Defendants failed to produce any documentation supporting personal responsibility.

48.     As a direct and proximate result of Defendants' FCCPA violations, Plaintiffs suffered actual damages, including emotional distress, anxiety, embarrassment, frustration, and loss of time.

49.     Pursuant to Fla. Stat. § 559.77, Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, injunctive relief, and reasonable attorney's fees and costs.

### JURY DEMAND

Plaintiffs request a trial by jury on all claims and issues so triable.

### PRAYER

Wherefore, **Sophia Loubeau-Griggs** and **Corey Griggs**, demand the following relief against Defendants:

a.      Compensatory; general and special damages in an amount in accordance with proof;

b.      Actual damages pursuant to FCCPA and FDCPA;



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**

c.     Statutory damages pursuant to FCCPA and FDCPA;

d.     Consequential damages and/or reliance damages;

e.     Restitution;

f.     Expectation damages;

g.     Reasonable attorneys' fees and expenses of litigation, including but

limited to those fees permitted by Fla. Stat. § 559.77(2) and 15 U.S.C. § 1692k(a)(3);

h.     Statutory remedies;

i.     Prejudgment interest where permitted by law;

j.     Punitive damages;

k.     Injunctive relief;

l.     Costs of suit and interest accrued incurred herein; and

m.     Other forms equitable and/or legal relief the Court deems just or proper.

Respectfully submitted by,

PIERRE **SIMON**
Attorneys for Plaintiffs
600 Southwest 4th Avenue,
Fort Lauderdale, Florida 33315

By: s/ Faudlin Pierre
Faudlin Pierre, Esq.
FBN. 56770
fplaw08@yahoo.com
(305) 336-9193



600 Southwest 4th Avenue, **Fort Lauderdale, Florida 33315**